iUNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE

| | | |
|---|---|---|
| FRANKLIN DEE COPELAND, JR., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No.: 3:21-CV-43-TAV-DCP |
| | ) | |
| PARKER ZAITZ, individually and as | ) | |
| Deputy Sheriff for the Sevier County | ) | |
| Sheriff's Department; | ) | |
| DEPUTY JOHN DOES A - E, | ) | |
| Individually and as Deputy Sheriffs for the | ) | |
| Sevier County Sheriff's Department; | ) | |
| SEVIER COUNTY SHERIFF'S | ) | |
| DEPARTMENT; and | ) | |
| SEVIER COUNTY, TENNESSEE, | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION

Before the Court is defendants'[1] motion for summary judgment [Doc. 24]. Defendants move the Court to dismiss plaintiff's complaint pursuant to Federal Rule of Civil Procedure 56 on several grounds. Plaintiff has not responded, and the time for doing so has long passed. *See* E.D. Tenn. L.R. 7.1(a). For the reasons explained below, defendants' motion [Doc. 24] will be **GRANTED**, and this case will be **DISMISSED**.

**I. Background**

On February 8, 2021, plaintiff brought this action against defendants Deputy Sheriff Parker Zaitz ("Deputy Zaitz"); the Sevier County Sheriff's Department ("the Sheriff's

---

[1] "Defendants" refers collectively to Parker Zaitz, the Sevier County Sheriff's Department, and Sevier County, Tennessee.

Department"); Sevier County, Tennessee ("Sevier County"); and Deputy John Does A through E, asserting causes of actions under federal and state law related to the use of force during his arrest [Doc. 1]. On February 8, 2020, Deputy Zaitz, working for the Sevier County Sheriff's Department, responded to a 911 dispatch call relating to a potential armed robbery involving the display of a gun [Doc. 24-3, ¶¶ 2–3]. He was instructed to look for a male and female who had left a cabin in an orange or red Jeep with aftermarket lights [*Id.* at ¶ 3]. Deputy Zaitz located a vehicle that matched this description with plaintiff in the passenger seat and a female in the driver's seat, and he conducted a felony traffic stop on the vehicle [*Id.* at ¶¶ 5–6]. Deputy Sheriff Abigail Starritt ("Deputy Starritt") arrived at the scene shortly after Deputy Zaitz's arrival [*Id.* at ¶ 5].

Due to the report that a firearm was involved, Deputy Zaitz and Deputy Starritt had their firearms drawn and pointed toward the vehicle as Deputy Zaitz issued commands to plaintiff and the female [*Id.* at ¶ 7; Doc. 24-4, ¶ 7]. Both occupants were instructed to exit the vehicle, and plaintiff was instructed to lift his shirt and turn around so that Deputy Zaitz could look for a gun [Doc. 24-3, ¶ 8]. Deputy Zaitz did not see a firearm on plaintiff during his visual inspection [*Id.*]. Although defendant appeared intoxicated and was slow in following instructions, plaintiff complied with Deputy Zaitz's commands, and Deputy Zaitz did not use any hands-on force [*Id.* at ¶ 9].

Plaintiff and the female were then questioned by Deputy Zaitz and Deputy Starritt about the events of the evening [*Id.* at ¶ 10]. They denied that any attempted robbery had occurred or that any firearm had been used [*Id.*]. Plaintiff also denied having a firearm on

2

him or in the vehicle [*Id.*]. After speaking with plaintiff and the female, Deputy Tim Marlow, Deputy Chad Ogle, and Deputy Chris Keifer arrived at the scene of the traffic stop [*Id.* at ¶ 11].

After these deputies arrived, Deputy Zaitz and Deputy Starritt went to the cabin to question the people who had reported the incident [*Id.*]. Upon arrival at the cabin, Deputy Zaitz and Deputy Starritt found two occupants who were questioned about the event [*Id.* at ¶ 12]. Both of them denied that any armed robbery had occurred [*Id.*]. However, they stated that plaintiff and the female had been at the cabin earlier, plaintiff was drunk, and plaintiff had pulled out a small gun [*Id.*]. They reported that plaintiff had taken out the gun and was waving it around after they had asked him to put it away [*Id.*]. Concerned for their safety, they left the cabin and called 911 [*Id.*].

Based on this information, Deputy Starritt radioed the officers who were still at the scene of the traffic stop and advised them that plaintiff should have a small handgun like a Derringer located in his pants [*Id.* at ¶ 13; Doc. 24-4, ¶ 12]. Thereafter, Deputy Zaitz and Deputy Starritt left the cabin and returned to the scene of the traffic stop [Doc. 24-3, ¶ 14]. Upon arrival, plaintiff had already been taken into custody with handcuffs and was on the ground at the wheel of the Jeep [*Id.*].

While Deputy Zaitz was not present at the scene over the course of plaintiff's arrest, he was given information from officers who were at the scene of plaintiff's arrest [*Id.* at ¶ 15]. Based on that information, Deputy Zaitz understands that when officers were patting plaintiff down in an attempt to determine whether he had a gun in his pants, plaintiff

3

began resisting their efforts to control his hands and to get him handcuffed [*Id.*]. The officers had to use some hands-on force to remove the gun from him and get him in handcuffs [*Id.*]. However, neither Deputy Zaitz nor Deputy Starritt was present when the officers used force to handcuff plaintiff [*Id.*]. In fact, Deputy Zaitz reports that he did not utilize any force on plaintiff after arriving back at the scene of the traffic stop [*Id.* at ¶ 16].

Sergeant Wayne Patterson ("Sergeant Patterson") had arrived on the scene while Deputy Zaitz and Deputy Starritt were at the cabin [*Id.* at ¶ 17]. Sergeant Patterson called for EMS to check on plaintiff because he was groaning and not responding to them appropriately [*Id.*]. After EMS arrived, other deputies adjusted plaintiff's handcuffs to improve his circulation, and at the request of the EMS providers, plaintiff's handcuffs were moved to the front [*Id.*]. The EMS providers evaluated plaintiff and determined that, although his blood sugar was somewhat low, he was not in immediate danger and could be taken to jail [*Id.*]. Plaintiff was transported to jail without any further issues or problems [*Id.* at ¶ 18]. He later pleaded guilty to some of the offenses he was charged with based on the events that had transpired [Doc. 24-1].

During Deputy Zaitz's interactions with plaintiff, the only force he used in relation to the traffic stop was having his service gun drawn and pointed in plaintiff's direction at the beginning of the traffic stop due to concerns relating to the armed robbery report and the involvement of a firearm [Doc. 24-3, ¶ 19]. Deputy Zaitz did not discharge his firearm, and he did not use any hands-on force with plaintiff or any non-lethal weapon against plaintiff [*Id.*]. He also did not witness the use of force that was necessary for the other

4

deputies to place plaintiff in handcuffs, and he did not witness any force against plaintiff by any deputy when he returned to the scene of the traffic stop [*Id.*]. Deputy Starritt corroborates Deputy Zaitz's recollection of events, including the amount of force that was used against plaintiff [Doc. 24-4, ¶ 14]. Both deputies were also wearing body cameras that captured footage of the deputies' interactions with plaintiff [Doc. 24-3, ¶ 4; Doc. 24-4, ¶¶ 4, 14; Doc. 26].[2]

Based on the events that transpired on February 8, 2020, plaintiff asserts the following federal claims: (1) "violation of civil rights 42 U.S.C. § 1983 defendants' deputies excessive force" and (2) "violation of civil rights 42 U.S.C. § 1983 defendants sheriff's department and county" [Doc. 1, ¶¶ 32–41]. In addition, plaintiff asserts five state law claims against defendants [*Id.* at ¶¶ 42–65].

Defendants filed the instant motion for summary judgment as to all of plaintiff's claims [Doc. 24]. As to plaintiff's § 1983 claim against the Sheriff's Department, the Sheriff's Department argues that it is entitled to summary judgment because it is not a suable entity [*Id.* at 2]. As to plaintiff's § 1983 claim against Deputy Zaitz in his official capacity, Deputy Zaitz argues that this claim is merely another way of suing Sevier County, and thus, any claim against him in his official capacity is redundant [Doc. 25, p. 2]. As to plaintiff's § 1983 claim against Deputy Zaitz in his individual capacity, Deputy Zaitz argues that he is entitled to qualified immunity under both the first and second prongs of

---

[2] The Court notes that it has reviewed the body camera footage submitted by defendants and takes into account the portrayal of the events as captured in those videos [*See* Doc. 26].

5

the qualified immunity test because he did not violate plaintiff's Fourth Amendment rights, and even if he did, a reasonable officer in his position could have believed that he was not violating plaintiff's Fourth Amendment rights in his interactions with plaintiff [Doc. 24, p. 2]. As to plaintiff's § 1983 claim against Sevier County, Sevier County argues that it is entitled to summary judgment because none of its policies or practices were a moving force in the alleged use of excessive force against plaintiff [*Id.*]. Defendants maintain that if the Court finds that they are entitled to summary judgment on all of plaintiff's federal claims, then the Court may decline to exercise supplemental jurisdiction over plaintiff's state law claims [Doc. 25, p. 4].

Plaintiff did not respond to defendants' motion for summary judgment, and the time for doing so has long passed. *See* E.D. Tenn. L.R. 7.1(a). Under this Court's local rules, "[f]ailure to respond to a motion may be deemed a waiver of any opposition to the relief sought." E.D. Tenn. L.R. 7.2. The Court notes that in addition to failing to timely respond, plaintiff also failed to respond to the Court's show cause order entered on April 27, 2023, giving plaintiff 10 days to show cause why defendants' motion should not be granted as unopposed [Doc. 27]. The Court further notes that following entry of the Court's show cause order, the parties entered a joint status report signed by both parties, wherein plaintiff agreed that he has not responded to defendants' pending motion for summary judgment [Doc. 28].

However, the Sixth Circuit has held that "a district court cannot grant summary judgment in favor of a movant simply because the adverse party has not responded."

6

*Carver v. Bunch*, 946 F.2d 451, 455 (6th Cir. 1991). Thus, despite plaintiff's failure to respond, the Court will analyze whether defendants have met their burden under Rule 56.

## II. Standard of Review

Rule 56(a) of the Federal Rules of Civil Procedure provides that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." In ruling on a motion for summary judgment, the court must draw all reasonable inferences in favor of the nonmoving party. *McLean v. 988011 Ontario, Ltd.*, 224 F.3d 797, 800 (6th Cir. 2000). As such, the moving party has the burden of conclusively showing the lack of any genuine issue of material fact. *Smith v. Hudson*, 600 F.2d 60, 63 (6th Cir. 1979). To successfully oppose a motion for summary judgment, "[t]he non-moving party . . . must present sufficient evidence from which a jury could reasonably find for him." *Jones v. Muskegon Cnty.*, 625 F.3d 935, 940 (6th Cir. 2010) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986)).

## III. Analysis

### A. Section 1983 Claim Against the Sheriff's Department

Before reaching the merits of plaintiff's § 1983 claim against the Sheriff's Department, the Court finds that plaintiff's claim must be dismissed because the Sheriff's Department is neither a "person" nor a political or corporate body within the terms of § 1983. *See Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690 (1978) (finding that "municipalities and other local government units [are] included among those persons to

7

whom § 1983 applies"); *Williams v. Baxter*, 536 F. Supp. 13, 16 (E.D. Tenn. 1981) (finding that a municipal police department is not a suable entity under § 1983 because it is a municipal agency or department, not a municipality). Indeed, the Sixth Circuit and courts in this district have previously held that a county sheriff's department is not an entity subject to suit under § 1983. *See Matthews v. Jones*, 35 F.3d 1046, 1049 (6th Cir. 1994) (holding that a county police department was not an entity that may be sued under § 1983); *Rhodes v. McDannel*, 945 F.2d 117, 120 (6th Cir. 1991) (same); *Newby v. Sharp*, No. 3:11-CV-534, 2012 WL 1230764, at *3 (E.D. Tenn. Apr. 12, 2012) (same); *Bradford v. Gardner*, 578 F. Supp. 382, 383 (E.D. Tenn. 1984) (same) (internal citations omitted). As a result, defendants' motion [Doc. 24] will be **GRANTED** as to plaintiff's § 1983 claim against the Sheriff's Department.

B. **Section 1983 Claim Against Deputy Zaitz in His Official Capacity**

Before reaching the merits of plaintiff's § 1983 claim against Deputy Zaitz in his official capacity, the Court similarly finds that plaintiff's claim must be dismissed because any claim against Deputy Zaitz in his official capacity is redundant. *See Dunfee v. Finchum*, 132 F. Supp. 3d 968, 980 (E.D. Tenn. 2015) (citing *Claybrook v. Birchwell*, 199 F.3d 350, 355 n.4 (6th Cir. 2000)) (dismissing official capacity claims against police officers where the public entity that they represented was also a party to the § 1983 suit). Indeed, the Sixth Circuit has held that "[a] suit against an individual in his official capacity is the equivalent of a suit against the governmental entity." *Matthews*, 35 F.3d at 1049 (citing *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 68 (1989)). Accordingly, because

8

plaintiff has also sued Sevier County, the Court will analyze plaintiff's § 1983 claim against Sevier County, and defendants' motion [Doc. 24] will be **GRANTED** as to plaintiff's § 1983 claim against Deputy Zaitz in his official capacity.

### C. Section 1983 Claim Against Deputy Zaitz in His Individual Capacity

The Court first notes that plaintiff bases, in part, his § 1983 claim against Deputy Zaitz on Article I, Sections 7 and 8 of the Tennessee Constitution [Doc. 1, ¶ 34]. However, this part of plaintiff's claim is without merit because "Tennessee does not recognize a private right of action for violations of the Tennessee Constitution." *Nance v. Kilpatrick*, No. 1:18-CV-11, 2019 WL 1409847, at \*14 (E.D. Tenn. Mar. 28, 2019) (citing *Cline v. Rogers*, 87 F.3d 176, 180 (6th Cir. 1996)).

Plaintiff also bases his § 1983 claim against Deputy Zaitz on the Fourth and Fourteenth Amendments of the U.S. Constitution [Doc. 1, ¶ 34]. However, Deputy Zaitz contends that plaintiff's claim only arises out of the Fourth Amendment, as case law indicates that excessive force claims should be analyzed under the Fourth Amendment rather than the Fourteenth Amendment [Doc. 25, p. 6]. The Court agrees. The Supreme Court has held that "*all* claims that law enforcement officers have used excessive force—deadly or not—in the course of an arrest, investigatory stop, or other 'seizure' of a free citizen should be analyzed under the Fourth Amendment and its 'reasonableness' standard, rather than under a 'substantive due process' approach." *Graham v. Connor*, 490 U.S. 386, 395 (1989) (emphasis in original). Thus, the Court will analyze plaintiff's § 1983 claim in the context of the Fourth Amendment only.

Deputy Zaitz contends that he is entitled to qualified immunity from plaintiff's § 1983 claim [Doc. 25, p. 6]. In order to state a claim for relief under § 1983, "a plaintiff must set forth facts that, when construed favorably, establish (1) the deprivation of a right secured by the Constitution or laws of the United States (2) caused by a person acting under the color of state law." *Miller v. Sanilac Cnty.*, 606 F.3d 240, 247 (6th Cir. 2010). "Public officials [] are eligible for qualified immunity if (1) they did not violate any constitutional guarantees or (2) the guarantee, even if violated, was not clearly established at the time of the alleged misconduct." *Citizens in Charge, Inc. v. Husted*, 810 F.3d 437, 440 (6th Cir. 2016) (internal quotation marks omitted). The Court has the discretion to determine which of the two prongs should be addressed first "in light of the circumstances in the particular case at hand." *Pearson v. Callahan*, 555 U.S. 223, 236 (2009).

The Court notes that "[p]laintiff bears the burden of showing that defendants are not entitled to qualified immunity." *Chappell v. City of Cleveland*, 585 F.3d 901, 907 (6th Cir. 2009). In addition, "[i]f the plaintiff fails to establish either element, the defendant is immune from suit." *T.S. v. Doe*, 742 F.3d 632, 635 (6th Cir. 2014).

### 1. Traffic Stop and Subsequent Arrest and Criminal Charges

In defendants' motion, Deputy Zaitz states that he does not believe that plaintiff is challenging the traffic stop itself as unconstitutional or the subsequent criminal charges as brought without probable cause [Doc. 25, p. 8]. Instead, Deputy Zaitz construes plaintiff's allegations as only asserting an excessive force claim [*Id.*]. However, in the event plaintiff is making such claims, Deputy Zaitz argues that he would still be entitled to qualified

10

immunity on the first prong because he was dispatched to stop a vehicle based upon a report of a possible armed robbery, and plaintiff pleaded guilty to three of the charges brought against him arising out of the traffic stop [*Id.* at 7–8]. In the alternative, Deputy Zaitz argues under the second prong that a reasonable officer in his position could have believed he was entitled to stop the vehicle based upon a report that the occupants of that vehicle had been involved in a possible armed robbery [*Id.* at 8]. Likewise, he states that a reasonable officer in his position could have believed there was probable cause to charge plaintiff for crimes related to the traffic stop where plaintiff pleaded guilty to three charges arising out of the stop [*Id.*].

In Count I of plaintiff's complaint, plaintiff alleges that Deputy Zaitz had a "non-delegable dut[y] to refrain . . . from seizing and detaining [p]laintiff without a lawful basis" [Doc. 1, ¶ 33]. Plaintiff also alleges that Deputy Zaitz deprived him of the "[f]reedom from unreasonable seizure of his person" [*Id.* at ¶ 34]. Thus, drawing all reasonable inferences in favor of plaintiff, the Court will construe this language as a challenge to the initial traffic stop and the subsequent arrest and criminal charges.

The Fourth Amendment protects people from unreasonable searches and seizures by the government. U.S. Const. amend. IV. "An ordinary traffic stop is a seizure." *United States v. Stevenson*, 43 F.4th 641, 644 (6th Cir. 2022) (internal quotation marks omitted). As a result, "an officer must be reasonably justified to stop a car[,]" and "[i]n this circuit, an officer is justified to stop a car based on mere reasonable suspicion that a felony has occurred or that a misdemeanor is occurring[.]" *Id.* (internal quotation marks omitted).

11

Here, on February 8, 2020, Deputy Zaitz responded to a 911 dispatch call relating to a potential armed robbery involving the display of a gun [Doc. 24-3, ¶ 3]. He was advised to look for a male and female who had left a cabin in an orange or red Jeep with aftermarket lights [*Id.*]. Based on this information, Deputy Zaitz located the Jeep with plaintiff in the passenger seat and a female in the driver seat and conducted a felony traffic stop [*Id.* at ¶¶ 5–6, 14]. Thus, Deputy Zaitz was reasonably justified in stopping the vehicle, as he had reasonable suspicion to believe that a felony had occurred and the vehicle in which plaintiff was a passenger resembled the description from the 911 dispatch call. As a result, Deputy Zaitz is entitled to qualified immunity on this part of plaintiff's claim because Deputy Zaitz did not violate plaintiff's Fourth Amendment rights by conducting a traffic stop.

In order to make an arrest, officers must have probable cause. *See Smith v. City of Wyoming*, 821 F.3d 697, 714 (6th Cir. 2016). "Probable cause is a practical and common-sensical standard based on the totality of the circumstances." *Id.* at 715 (internal quotation marks omitted). In other words, "[p]robable cause exists where the facts and circumstances within the officer's knowledge [] are sufficient to warrant a prudent person . . . in believing . . . that the suspect committed, is committing, or is about to commit an offense." *Id.* (internal quotation marks omitted).

Here, after plaintiff and the female denied that any attempted robbery had occurred or that any firearm had been used or was possessed by plaintiff, Deputy Zaitz and Deputy Starritt traveled to the cabin where the incident was first reported [Doc. 24-3, ¶ 11]. The

occupants of the cabin also denied that any attempted robbery had occurred, but they advised the deputies that plaintiff and the female had been at the cabin, plaintiff was intoxicated, and he had pulled out a small gun [*Id.* at ¶ 12]. The occupants reported that they feared for their safety when plaintiff was waving the gun around despite their request for him to put it away [*Id.*]. In addition to this information, plaintiff had seemed intoxicated at the initial traffic stop, as he was slow in following instructions [*Id.* at ¶ 9]. Based on all this information, Deputy Starritt radioed to the remaining deputies at the scene of the traffic stop that plaintiff should probably have a small handgun in his pants [Doc. 24-4, ¶ 12]. The deputies then proceeded to remove the gun from plaintiff's pants and place him in handcuffs [Doc. 24-3, ¶ 15]. Plaintiff was then transported to jail and later pled guilty to three of the charged offenses from the events that had transpired [*Id.* at ¶ 18; Doc. 24-1].

Based on the totality of these circumstances, Deputy Zaitz and the other deputies on the scene had probable cause to believe plaintiff had committed an offense. Specifically, there was probable cause to believe that plaintiff possessed a handgun while under the influence of alcohol and that he engaged in reckless conduct that placed other people in imminent danger of death or serious bodily injury [*See* Doc. 24-1]. *See* Tenn. Code Ann. §§ 39-13-103, 39-17-1321. As a result, Deputy Zaitz is entitled to qualified immunity on this part of plaintiff's claim because plaintiff's Fourth Amendment rights were not violated when plaintiff was arrested and subsequently charged with three criminal offenses.

Accordingly, having found that plaintiff's Fourth Amendment rights were not violated in the context of the initial traffic stop or the subsequent arrest and criminal

13

charges, defendants' motion [Doc. 24] will be **GRANTED** as to this part of plaintiff's § 1983 claim against Deputy Zaitz.

### 2. Excessive Use of Force

As to plaintiff's excessive use of force claim, Deputy Zaitz argues that he is entitled to qualified immunity under the first prong because the only force he used was pointing his weapon in plaintiff's direction based on a dispatch call of an armed robbery [Doc. 25, p. 9]. Deputy Zaitz states that even though this information later turned out to be incorrect, he was entitled to rely upon it at the time he drew his weapon [*Id.*]. In addition, Deputy Zaitz asserts that it was later discovered that plaintiff was armed as proven by his guilty plea to the charge of carrying a firearm while under the influence of an intoxicant [*Id.*; Doc. 24-1, pp. 1–2]. Thus, Deputy Zaitz maintains that he did not use excessive force against plaintiff, and there was no use of force by the other deputies in his presence [Doc. 25, p. 9]. In the alternative, Deputy Zaitz contends that he is entitled to qualified immunity under the second prong because a reasonable officer in his position could have believed that he was not using excessive force under these facts and that he was not failing to prevent the use of excessive force [*Id.* at 9–10].

When an excessive force claim is asserted, "the question is whether the officers' actions are 'objectively reasonable' in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation." *Graham*, 490 U.S. at 397. "Determining whether the force used to effect a particular seizure is reasonable under the Fourth Amendment requires a careful balancing of the nature and quality of the intrusion

14

on the individual's Fourth Amendment interests against the countervailing governmental interests at stake." *Id.* at 396 (internal quotation marks omitted). "[T]he right to make an arrest or investigatory stop necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it." *Id.* In analyzing an excessive force claim, courts are to pay "careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Id.*

Here, Deputy Zaitz stopped the vehicle in which plaintiff was a passenger based on a 911 dispatch call relating to a potential armed robbery that involved the display of a gun [Doc. 24-3, ¶ 3]. Thus, Deputy Zaitz had reason to believe that plaintiff possessed a gun that could be used against him and others. *Cf. Ingram v. City of Columbus*, 185 F.3d 579, 592 (6th Cir. 1999) (where officers had no reason to believe that an individual was dangerous or that weapons were present). Deputy Zaitz's reasonable belief that plaintiff possessed a weapon justified his acts of drawing his weapon, instructing plaintiff and the female to exit the vehicle, and instructing plaintiff to lift his shirt so that Deputy Zaitz could look for a weapon [Doc. 24-3, ¶¶ 7–8]. *See Wright v. City of Euclid*, 962 F.3d 852, 865 (6th Cir. 2020) (citing *United States v. Hardnett*, 804 F.2d 353, 357 (6th Cir. 1986)) (finding it reasonable for officers to display weapons when they reasonably fear for their safety). Deputy Zaitz also used no hands-on force with plaintiff [Doc. 24-3, ¶ 9; Doc. 24-4, ¶ 14].

15

Moreover, while Deputy Zaitz was not involved in plaintiff's arrest, the deputies who placed plaintiff in handcuffs and arrested him were justified in the amount of force they used to restrain and detain plaintiff [Doc. 24-3, ¶ 15]. Those deputies had been informed by Deputy Starritt that the occupants of the cabin had reported that plaintiff possessed a gun and that it was probably located in his pants [*Id.* at ¶ 13; Doc. 24-4, ¶ 12]. Thereafter, the deputies used hands-on force to retrieve the gun from plaintiff's pants and placed plaintiff in handcuffs when he began resisting the deputies' efforts [Doc. 24-3, ¶ 15]. *See United States v. McCallister*, 39 F.4th 368, 373 (6th Cir. 2022) (finding that officers are permitted under the Fourth Amendment to search for weapons "where there is reasonable suspicion that the person searched may be armed and dangerous") (internal quotation marks and citations omitted). Further, the Court notes that in transporting plaintiff, the deputies and the EMS providers adjusted plaintiff's handcuffs to improve his circulation, moved his handcuffs to the front, and checked his blood sugar levels to ensure it was safe to take him to jail without further treatment [Doc. 24-3, ¶¶ 17–18]. *See Morrison v. Bd. of Trs.*, 583 F.3d 394, 401 (6th Cir. 2009) (stating that officers must have ignored a person's complaints that handcuffs were too tight for a handcuffing claim to survive summary judgment).

Thus, the Court finds that neither Deputy Zaitz nor the other deputies at the scene used excessive force against plaintiff in executing the traffic stop or placing plaintiff under arrest. Accordingly, Deputy Zaitz is entitled to qualified immunity because plaintiff's

Fourth Amendment rights were not violated, and defendants' motion [Doc. 24] will be **GRANTED** as to this part of plaintiff's § 1983 claim against Deputy Zaitz.

   D.   **Section 1983 Claim Against Sevier County**

The Court first notes that plaintiff bases, in part, his § 1983 claim against Sevier County on Article I, Sections 7 and 8 of the Tennessee Constitution [Doc. 1, ¶¶ 39–40]. However, as mentioned previously, this part of plaintiff's claim is without merit because "Tennessee does not recognize a private right of action for violations of the Tennessee Constitution." *Nance*, 2019 WL 1409847, at *14 (citing *Cline*, 87 F.3d at 180).

Plaintiff also bases his § 1983 claim against Sevier County on the Fourth and Fourteenth Amendments of the U.S. Constitution [Doc. 1, ¶¶ 39–40]. "A plaintiff may only hold a municipal entity liable under § 1983 for the entity's own wrongdoing." *Baynes v. Cleland*, 799 F.3d 600, 620 (6th Cir. 2015). "Stated otherwise, for a municipal entity to be liable for a violation of § 1983, a plaintiff must show: (1) a deprivation of a constitutional right; and (2) that the municipal entity is responsible for that deprivation." *Id.*

Here, the Court has already determined, *supra*, that neither Deputy Zaitz nor the other deputies who interacted with plaintiff on February 8, 2020, violated plaintiff's Fourth Amendment rights. The Court also determined, *supra*, that plaintiff's claims arise only under the Fourth Amendment, not the Fourteenth Amendment. Thus, in the absence of an underlying unconstitutional act, plaintiff's § 1983 claim against Sevier County must also fail. *See Burkey v. Hunter*, 790 F. App'x 40, 41 (6th Cir. 2020) ("This circuit has continuously held that under § 1983, a county can only be held liable if there is a showing

of an underlying constitutional violation by the county's officials."); *Baynes*, 799 F.3d at 622 (dismissing the plaintiff's § 1983 claim against the county where the plaintiff failed to present facts from which a reasonable jury could conclude that the defendants' conduct violated his constitutional rights). Accordingly, defendants' motion [Doc. 24] will be **GRANTED** as to plaintiff's § 1983 claim against Sevier County.

### E. *Sua Sponte* Dismissal of Deputy John Doe Defendants

The Court raises *sua sponte* the statute of limitations as it relates to the Deputy John Doe defendants named in this action. The statute of limitations applicable to a § 1983 action is the state statute of limitations applicable to the cause of action under the law of the state in which the § 1983 claim arises. *Eidson v. State of Tenn. Dep't of Child.'s Servs.*, 510 F.3d 631, 634 (6th Cir. 2007). Tennessee's statute of limitations for claims brought under federal civil rights statutes such as § 1983 is one year. *See* Tenn. Code Ann. § 28-3-104(a); *Roberson v. Tennessee*, 399 F.3d 792, 794 (6th Cir. 2005). The statute of limitations generally begins to run when "the plaintiff knows or has reason to know of the injury which is the basis of the action." *Kovacic v. Cuyahoga Cnty. Dep't of Child. & Fam. Servs.*, 606 F.3d 301, 307 (6th Cir. 2010) (quoting *Kuhnle Bros., Inc. v. Cnty. of Geauga*, 103 F.3d 516, 520 (6th Cir. 1997)). The Court looks "to what event should have alerted the typical lay person to protect his or her rights." *Eidson*, 510 F.3d at 635 (quoting *Dixon v. Anderson*, 928 F.2d 212, 215 (6th Cir. 1991)).

Here, the events giving rise to this case occurred on February 8, 2020. The naming of Deputy John Doe defendants in plaintiff's February 8, 2021, complaint does not stop the

statute of limitations from running or toll the limitations period as to those defendants. *See Cross v. City of Detroit*, No. 06-11825, 2008 WL 2858407, at *1 (E.D. Mich. July 23, 2008) (citing *Garvin v. City of Philadelphia*, 354 F.3d 215, 220 (3rd Cir. 2003)). Plaintiff has not attempted to amend his complaint to name the Deputy John Doe defendants, and thus, plaintiff's claims against Deputy John Doe defendants A through E will be **DISMISSED *sua sponte*, with prejudice**. *See id.* (dismissing *sua sponte* and with prejudice the plaintiff's claim against John Doe police officer for civil rights violations because the plaintiff "did not seek leave to amend the Complaint to name the John Doe defendant prior to the expiration of the statute of limitations"); *see also Smith v. City of Akron*, 476 F. App'x 67, 69 (6th Cir. 2012) (holding that Rule 15(c) of the Federal Rules of Civil Procedure offers no remedy when plaintiff "simply did not know whom to sue or opted not to find out within the limitations period" and "waited until the last day of the . . . limitations period to file his complaint, [which] left no time to discover the identity of his arresting officers within the relevant time"); *Eady v. Young*, No. 4:12-CV-28, 2013 WL 11328159, at *4 (E.D. Tenn. Feb. 6, 2013) (finding that Rule 15(c) allows relation back for the mistaken identification of defendants, not for John Doe defendants).

F.  **State Law Claims**

The Court agrees with defendants that the Court has the discretion to decline to exercise supplemental jurisdiction over plaintiff's state law claims if all claims over which there was original jurisdiction have been dismissed. *See Brooks v. Rothe*, 577 F.3d 701, 709 (6th Cir. 2009). Because the Court has already determined, *supra*, that all plaintiff's

19

claims arising under federal law will be dismissed as to all defendants, it declines to exercise supplemental jurisdiction over his remaining state law claims. *See Hoogland v. City of Maryville*, No. 3:19-CV-383, 2021 WL 3610459, at *14 (E.D. Tenn. Aug. 13, 2021). As a result, defendants' motion [Doc. 24] will be **GRANTED** as to all of plaintiff's state law claims.

IV.   **Conclusion**

For the reasons explained above, defendants' motion for summary judgment [Doc. 24] will be **GRANTED**, plaintiff's claims against Deputy John Doe defendants A through E will be **DISMISSED** *sua sponte*, **with prejudice**, and this case will be **DISMISSED**.

IT IS SO ORDERED.

s/ Thomas A. Varlan
UNITED STATES DISTRICT JUDGE